McRAE v. TOWNSHIP OF HART.

1. MUNICIPAL CORPORATIONS—VILLAGES—BRIDGES—HIGHWAYS.

1 Comp. Laws, § 2775 (3 How. Stat. [2d Ed.] § 5994), as amended, gives supervision of bridges, etc., to the village council of villages incorporated thereunder, provided that bridges in highways that have been laid out by the township highway commissioners or by any other authority shall be kept in repair by the township. Act No. 283, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 2174 *et seq.*), provides that owners of mill races shall keep a good and sufficient bridge with a substantial rail on each side over the same where they cross the highway, and in case of neglect or failure to perform the duty the township shall erect or repair the bridge at the expense of such private owner. Said act further provides (chap. 1, § 26; 2 How. Stat. [2d Ed.] § 2199) that State roads shall remain under the care of townships through which they pass. *Held*, that the defendant township was charged with the duty of repairing and maintaining a bridge over a mill race crossing a State road within the limits of a village which has been incorporated subsequent to the laying out of the highway, and the duty did not rest on the village in which the bridge was situated.[1]

2. BRIDGES—MILLS—RACE—PERSONAL INJURIES.

The duty of mill owners to build and maintain a bridge over a mill race that crosses a public highway is a common-law duty which is affirmed by the statutes of this State.

3. PARTIES—NEGLIGENCE—JOINT TORT FEASORS.

In an action for personal injuries resulting from plaintiff's falling from a bridge having a defective railing, which it was the duty of the owners of the mill race which it crossed to keep in repair, and of the township authorities where the bridge was situated, the proprietors of the mill and such township might properly be joined as defendants.

---

[1] As to municipal liability for injury by defects or obstructions on bridge, see note in 20 L. R. A. (N. S.) 571.

On the question of the duty of the proprietor as to the maintenance of a bridge, see notes in 58 L. R. A. 162 and 30 L. R. A. (N. S.) 362.

4. BRIDGES—MUNICIPAL CORPORATIONS—NEGLIGENCE.

Whether the plaintiff, who rode his wheel upon the bridge close to the defective railing and there dismounted, was guilty of contributory negligence was a question of fact for the jury.

Error to Oceana; Sullivan, J. Submitted January 15, 1914. (Docket No. 80.) Decided March 26, 1914.

Case by William R. McRae against the township of Hart and T. S. Gurney and Carrie M. Gurney for personal injuries. Judgment for plaintiff, and defendants bring error. Affirmed.

*C. B. Stevens* and *C. B. Cross*, for appellant Hart township.

*F. E. Wetmore*, for appellants Gurney.

*William H. Simpson (Rufus F. Skeels*, of counsel), for appellee.

OSTRANDER, J. Plaintiff rode his bicycle to and upon a bridge over a mill race in a highway. In dismounting, on account of an accumulation of dirt washed upon the bridge out of the highway by the rain, he struck, or pushed against, or rested upon, the railing of the bridge, which, being insecure, gave way, and he fell some 20 feet into the stream. This was July 13, 1912. He sued the township and the owners of the mill jointly, and recovered a judgment against both. It is alleged in the declaration that each of the defendants owed the duty to maintain the bridge in a reasonably safe condition and to this end to maintain good and sufficient railings on the structure; the duty being based upon Act No. 149 of the Public Acts of 1855 and chapter 8 of Act No. 283 of the Public Acts of 1909, and Act No. 264 of the Public Acts of 1887, and chapter 22 of Act No. 283 of the Public Acts of 1909. This in the first count. In the second count it is alleged that defendants Gurney, by reason of Act

No. 149 of the Public Acts of 1855 and chapter 8 of Act No. 283 of the Public Acts of 1909, owed the duty to at all times keep a good and sufficient bridge with a substantial railing over said mill race, and if they did not it then became the duty of the township of Hart and its highway commissioner to repair the bridge; that by virtue of Act No. 264 of Public Acts of 1887 and Act No. 283 of the Public Acts of 1909 it became the duty of the township of Hart to at all times keep the bridge in a reasonable state of repair. In a third count, without reference to the statutes, it is alleged that defendants Gurney dug the mill race after the highway was opened, and built and maintained the bridge over the race, and by reason of the premises it became the duty of said defendants and of the township to at all times keep the bridge in repair with a substantial railing thereon and to maintain the bridge in a condition reasonably safe and fit for public travel.

At the trial it was conceded in open court by all of the parties—

"That the village of Hart was incorporated by special act of the legislature in the year 1885, and that said village is now governed by the general act for the incorporation of villages as it was passed in the year 1895 and now appears in the Compiled Laws of 1897 and amendments thereto, and that the highway at the place where the injury claimed by the plaintiff occurred is a State road within the village of Hart, extending through the village and out towards Pentwater, and was laid out before the village was incorporated, and that the mill race over which was built the bridge where the injury occurred was dug after the highway was established and in use before the incorporation of the village, and that the bridge in question where the injury occurred is within the corporate limits of the village of Hart; also, that at the time of the accident or injury the Gurney Milling Company was composed of T. S. Gurney and Carrie M. Gurney."

It does not appear to be disputed that defendants Gurney erected the structure and maintained it, and that, as constructed and maintained by them, it was a fit structure, railings and all. Within two years before the plaintiff sustained his injuries, the bridge had been closed to travel, imperfect material had been removed and replaced, and the bridge restored. In April, 1912, some one who desired to move some houses along the highway took down the railings of the bridge, and for some time there were no railings. The same person, upon complaint being made to him by the mill owners and by the village authorities, put a temporary railing on the bridge, in appearance and in fact insecure and ineffective. Defendants Gurney had also constructed, and they maintained, another bridge in the highway, or partly in the highway, adjoining their mill, and this bridge could be and was used by people traveling the highway, and was made use of during the time the houses were being moved in the highway and while the other bridge was without railings.

There are separate assignments of error by the township and by the Gurneys, some of them based upon rulings concerning the conduct of the trial, and others which present the contention that each was entitled to a peremptory instruction that there could be no recovery by the plaintiff. Errors are assigned also upon refusals to charge as requested and upon the charge given.

It is the contention of the township of Hart that the bridge was not a township bridge, that it had no jurisdiction over the same and no duty to perform in relation thereto; the duty to keep the bridge in repair resting primarily on the proprietors of the mill and secondarily upon the village of Hart. Further contentions are that plaintiff was guilty of negligence, as matter of law, and it is incidentally claimed there

is a misjoinder of defendants Gurney and the township. To these points the brief for the township is devoted.

Defendants Gurney join in the contentions that plaintiff was guilty of negligence and that there was a misjoinder of defendants, and contend also that in any event defendants Gurney are not liable to plaintiff in this action. Error is also assigned upon the refusal of the court to charge, without qualification, that the jury might acquit either of the defendants. The qualified instruction given was that whether one was acquitted and the other held depended upon whether one had, and the other did not have, the required notice or knowledge of the condition of the bridge and opportunity to repair it.

There is no testimony tending to prove the consent of either of the defendants to the removal of the railing of the bridge. There is testimony tending to prove knowledge of the township highway commissioner and of the other defendants that the railing had been removed, and to prove that the character of the temporary railing was patent and might have been, in the considerable time which it remained, observed by all defendants.

Act No. 283 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 2174) is:

"An act to revise, consolidate and add to the laws relating to the establishment, opening, improvement, maintenance and use of the public highways * * * the building, repairing and preservation of bridges; * * * and defining the powers, duties and compensation of State, county, township and district highway officials."

Much of the ancient law upon these subjects is preserved and re-enacted in this statute. Among its provisions are the following:

Chapter 1: "SEC. 26. All State roads which are

now or may hereafter be laid out in this State shall be under the care of the commissioners of highways of the several townships through which the same shall pass, and subject to be by them opened and kept in repair in the same manner as township roads, but such State roads shall be altered or discontinued only by the boards of supervisors of the counties in which they may be situated."

Chapter 8: "SEC. 13. There shall be no bridge, culvert or artificial roadway of any kind constructed in any public highway of this State, over any water course thereof having a roadway of less than sixteen feet in width, and the same shall be built of sufficient strength to safely carry a ten-ton load.

"SEC. 14. It shall be the duty of all owners, occupiers, or possessors of mills or other waterworks, where any race or races appertaining to the same may cross a public highway, to keep a good and sufficient bridge or bridges, not less than sixteen feet in width, with a substantial railing on each side thereof, over the same, except where said mills have been erected and the races dug previous to the formation of said highway.

"SEC. 15. In all cases where the owner or owners, occupiers, or possessors of any such mill or mills, or other waterworks, shall refuse or neglect to make such bridge or bridges, or shall refuse or neglect to keep the same in good repair, it shall be the duty of the commissioner of highways of the township in which such highway may be, to proceed forthwith to erect or repair such bridge or bridges, at the expense of the person or persons whose duty it was to have erected or repaired such bridges.

"SEC. 16. The expenses so made or incurred by said commissioner of highways, in erecting or repairing such bridge or bridges, shall be a legal charge against the owner or owners, occupiers, or possessors of such mill or mills, or other waterworks; and it shall be the duty of the said commissioner of highways to prosecute the person or persons so chargeable, in an action of assumpsit, for the expenses so made or incurred, and to cause the damages recovered in such prosecution to be applied toward the payment of said expenses."

"SEC. 26. The bridges within the limits of any vil-

lage in the highways leading into or through said village which have been or shall hereafter be laid out by the commissioners of highways of the township or townships in which said village may be located or established by any other lawful authority, except the authority of such village, shall be built, controlled and kept in repair by the township or townships in which they may be located, the same as if said village were not incorporated, and all the other bridges in said village shall be built, controlled and kept in repair by said village."

Chapter 20: "Sec. 5. All State roads which now are or hereafter may be within the corporate limits of any city or village within this State, shall be under the supervision of the common council or board of trustees of such city or village, with power to control, vacate or alter such roads within their corporate limits."

Chapter 22, § 1, gives a right of action to persons sustaining bodily injuries by reason of the neglect to keep public highways and streets and bridges in a condition reasonably safe and fit for travel—

"By the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, * * * whose duty it is to keep the same in reasonable repair."

Section 2775, 1 Comp. Laws, a portion of the act under which the village of Hart is now incorporated, as amended by Act No. 223, Public Acts of 1899 (3 How. Stat. [2d Ed.] § 5994), provides:

"The council shall have supervision and control of all public highways, bridges, streets, avenues, alleys, sidewalks and public grounds within the village, and shall have the like authority over the same as is given by the general laws of the State. * * * *Provided*, that the bridges within the limits of any village incorporated under this act in the highways leading into or through the said village which have been laid out or shall hereafter be laid out by the commissioner of highways of the township or townships in which said village may be located, or laid out by any other

authority other than that of said village, shall be built, controlled and kept in repair by the township or townships in which the same may be located, the same as if said village were not incorporated and the fact that any such highways are laid out and used as such at the time of such incorporation of said village shall be deemed sufficient to make the same township highways, and the township or townships in which they may be located liable as aforesaid and all other bridges in said village shall be built, controlled and kept in repair by said village."

The bridge in question is in a highway located and established by authority other than the authority of the village of Hart, within the corporate limits of which the bridge is situated. Therefore the township owes at least a qualified duty to control it and keep it in repair unless it can be said that the statutes, section 26 of chapter 8 of Act No. 283 of the Public Acts of 1909, and 1 Comp. Laws, § 2775, as amended, put under control of the township authorities only such bridges, in such highways, within the limits of incorporated villages, as are built and kept in repair at public expense. If the statute is construed as relieving the township of responsibility, then all bridges over mill races, in all highways within the limits of an incorporated village, would be under village, and not township, control, and the township of Hart is not a proper defendant in this action. If the particular bridge was outside the limits of the village, the township authority to repair it at the expense of the owner would be undoubted. While incorporated villages are given supervision and control over all bridges within village limits, the proviso to section 2775, above set out, qualifies the enacting part of the section, excepting those bridges which are in highways laid out by other than village authority; the proviso being in harmony with section 26 of chapter 8 of Act No. 283 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 2299), and with a policy which orig-

inated at a very early time. The cases of *Merrill* v.
*Village of Kalamazoo*, 35 Mich. 211, and *Commis-
sioner of Highways* v. *Willard*, 41 Mich. 627 (3 N. W.
164), are relied upon by the defendant township. In
neither of those cases was the power of the village,
under special charter, qualified as it is in the general
law we are considering. Those cases were decided
upon a construction of the particular charters. So
was the case of *Quinlan* v. *Village of Manistique*, 85
Mich. 22 (48 N. W. 172), in which a recovery from
the village for injuries resulting from a defective
bridge within village limits was refused. In that
case it was said, considering the act of village incor-
poration and the general law together, that the duty
of the township will not be shifted unless the intent
so to do is clear. It must be held that the township
of Hart, and not the village of Hart, had the author-
ity to repair the bridge at the expense of the owner,
he refusing, and that the township may be liable to
one injured by reason of the bridge being out of re-
pair, or in a condition not reasonably fit for public
travel.

The duty of the mill owners to build and maintain
a bridge over the mill race is a common-law duty.
*Merrill* v. *Village of Kalamazoo, supra; Perley* v.
*Chandler*, 6 Mass. 454 (4 Am. Dec. 159) ; *King* v.
*Inhabitants of the West Riding of Yorkshire*, 2 East,
342; *Heacock* v. *Sherman*, 14 Wend. (N. Y.) 58; 40
Cyc. p. 651. Our statute is in affirmance of the com-
mon-law duty and affords a means for enforcing its
performance for the benefit of the public. Since the
public must use a bridge constructed over a race in
a highway, negligence of the owner in failing to con-
struct or repair the bridge may support an action by
an individual lawfully using the highway and injured
by absence of or defects in the bridge. *Heacock* v.
*Sherman, supra.*

I have been of opinion, notwithstanding the fact that both defendants owed plaintiff the duty to keep the bridge in repair, that because the wrong suffered was not intended but was the result of omission to perform a duty, and because legal defenses open to one defendant were not open to the other, there was substantial objection to treating the duty as a joint duty and the defendants as joint tort-feasors. My Brethren are of opinion that as both defendants owed to plaintiff, ultimately, the same duty, there is no objection to suing both of them in one action and recovering judgment against both.

Whether plaintiff was himself negligent in riding his wheel close to the temporary railing and there dismounting was, in view of his familiarity with the premises and with their condition, rather a close question. But it is a question of fact, and not of law, upon this record.

It is not perceived how rulings assigned as erroneous, other than those already considered, prejudiced either of the defendants.

No reversible error is pointed out, and the judgment is therefore affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.